THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD FINKEY, Defendant-Appellant.

Fourth District    No. 17258

Opinion filed March 25, 1982.

Daniel D. Yuhas and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:
Two counts attempt murder.
One count aggravated arson.
Jury: guilty, all three.
Sentences: 30-30-20, concurrent.
We affirm.

The handful of facts needed to relate this appeal may be neatly and pithily stated. In the early morning hours of August 14, 1979, the defendant Finkey began an altercation with his wife. At the time, a small child was asleep in an upstairs bedroom of the defendant's home and defendant refused to allow his wife to remove the child from the house. Eventually, the police were called. The defendant ordered the officers off of his property and began shooting at them with a pistol. In the ensuing gun battle, three police officers were wounded. The defendant was also shot. During this chaotic period, a fire broke out in the garage attached to the defendant's home—one which the Decatur fire marshal testified had been set intentionally.

At trial, the defendant raised an insanity defense. Dr. William F. Henebry, a psychiatrist who testified for the defense, had examined the defendant on two occasions. At the first meeting, the psychiatrist elicited information from the defendant about his background and about the events of the August 14 shoot-out. Based on this initial examination, Dr. Henebry found no evidence that the defendant suffered from an organic brain syndrome that would have caused his insanity at the time of the shooting. Approximately one month later, Dr. Henebry again met with the defendant. At this second meeting, the defendant revealed that he had learned about his own involvement in the shootings from hospital personnel. According to the defendant, he had no independent recollection of the August 14, 1979, events. This second examination led Dr. Henebry to conclude that the defendant suffered from an acute organic brain syndrome known as pathological intoxication which caused him to lack substantial capacity either to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct.

On rebuttal, another psychiatrist testified that on August 14, 1979, the defendant suffered from the mental disorder of depression. In the opinion of the State's psychiatrist, this mental disease did not cause the defendant to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the law.

The State also called Detective Bradley Collins as a rebuttal witness. Detective Collins testified about an October 1979 conversation between himself and the defendant which occurred in the defendant's hospital room, after the defendant had been charged and had retained an attorney. Only Detective Collins and the defendant were present. The defendant revealed to Detective Collins that he had some recall of the events charged. This evidence was offered to rebut the determination of Dr. Henebry that the defendant suffered from pathological intoxication based, in part, on symptoms of amnesia. While Finkey did file a pretrial motion *in limine* (which was granted as to the State's case in chief), he did not object at trial to Collins' rebuttal testimony.

Defendant raises two issues on appeal.

## I

■■ Finkey argues before this court that the jury should not have been allowed to hear his statements to Detective Collins because they were obtained in violation of his *Miranda* rights. However, "[i]t does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards." (*Harris v. New York* (1971), 401 U.S. 222, 224, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645 (allowing use of a defendant's prior inconsistent statements, obtained in violation of *Miranda*, for impeachment purposes).) See also *Oregon v. Hass* (1975), 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215, where a similar use of defendant's statements was allowed and where the court emphasized that *Miranda* should not be an obstacle in the way of the search for truth. In *Hass*, the court said:

"* * * the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." 420 U.S. 714, 722, 43 L. Ed. 2d 570, 577-78, 95 S. Ct. 1215, 1221.

Finkey did not testify at his trial, so the statements could not have been admitted for impeachment purposes. However, the rationale of *Harris* and *Hass* still applies. There is no argument that the statements were involuntary. It is also apparent that the statements did not contribute to the jury's determination that Finkey had performed the acts on which his convictions were based. The statements were only admitted in rebuttal and the jury was instructed that they were to consider the evidence only as it related to defendant's state of mind at the time of the offense. Further, the other evidence—the admission of which defendant does not claim is improper—establishes beyond a reasonable doubt the *actus reus* portion of the crimes with which Finkey was charged.

The statements to Detective Collins were extremely relevant to defendant's insanity defense. Finkey made representations to a psychiatrist, which statements formed—at least to some extent—the basis of the psychiatrist's opinion that Finkey was not legally responsible for his actions of August 14, 1979. Just as a defendant cannot be allowed to directly perjure himself and then hide behind the fifth amendment, he cannot be allowed to *prima facie* establish an insanity defense by his representations to a psychiatrist without affording the State an opportunity to challenge the veracity of those statements.

No reported decision of the courts of this State has addressed precisely this issue, but *People v. Muskgrove* (1976), 44 Ill. App. 3d 381, 358 N.E.2d 336, is closely analogous. Muskgrove, charged with attempt murder and armed violence, interposed an insanity defense. He did not testify in his own behalf, but attempted to establish a *prima facie* defense

through the testimony of a police officer. On direct, the officer testified that Muskgrove's behavior at the time of his arrest was "irrational" and that he was "rambling on." On cross-examination, the prosecution brought out that the one thing the defendant did not ramble about at the time of his arrest was that he wanted to see his attorney, whom he identified by name. The court held that because the request for an attorney was relevant to the determination of the defendant's sanity, it was not error to admit it, especially since the defendant had not objected at trial.

■■ The *Muskgrove* court quoted from *United States v. St. Pierre* (2d Cir. 1942), 132 F.2d 837, 840, wherein Judge Learned Hand held that the fifth amendment " '* * * should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition.' " (44 Ill. App. 3d 381, 389.) We agree. No error.

## II

The defendant was sentenced to the maximum 30-year term of imprisonment on each count of attempt murder. Before sentencing, the trial court stated that the defendant's intoxication was not sufficient to be a mitigating factor. The defendant now contends that the trial court erred by discounting intoxication as a mitigating factor and abused its discretion in sentencing him to the maximum term of imprisonment for attempt murder. Thus, the defendant asks that this cause be remanded for resentencing.

■■ There is evidence in the record to show that the defendant was in control of his actions on August 14, 1979, despite his alleged intoxication and mental ailments. The defendant had a criminal history which included a conviction for assault with an intent to rape. During the morning of August 14, 1979, the defendant committed, without any provocation, a series of violent acts. The record reveals that the trial judge did a commendable job of considering all the statutory factors applicable in minimizing or extending sentences. A court of review cannot substitute its judgment for that of the trial court merely because it would have balanced the appropriate factors differently if it had been assigned the task of sentencing. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) We therefore find that the trial judge did not abuse his discretion when sentencing the defendant.

Both the convictions and sentences are affirmed.

Affirmed.

GREEN, P. J., and TRAPP, J., concur.