THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRYL JAMES, Defendant-Appellant.

First District (3rd Division)   No. 84—640

Opinion filed February 25, 1987.

Steven Clark and Karen Michels, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Mary Ellen Dienes, and Sharon Johnson Coleman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Darryl James, was convicted after a jury trial of murder and attempted murder and the court sentenced him to concurrent terms of 30 years for murder and 15 years for attempted murder. On

appeal, defendant, who was 15 years old at the time of the offense, contends that his fourth amendment rights were violated when the trial court admitted defendant's previously suppressed statement to impeach the testimony of a defense witness when defendant did not testify at trial.

On August 30, 1982, at approximately 11 p.m., police officers arrived at the scene of a shooting. They found Geliria Boyd and Delbert Collins shot and lying in the grass. Boyd, who was shot in the head, died shortly thereafter. Several eyewitnesses volunteered information to the police officers. The five witnesses to the crime who testified for the State at trial were all friends and members of a group called "the B Boys."

The victims and all of their friends, eight or nine in total, were returning from visiting a friend when they passed a group of three persons. One of the three individuals asked the larger group if anyone had money, and when his demand was not met, pulled a handgun and fired shots into the larger group. One witness heard four or five shots.

The five State witnesses described two of the offenders as being 6 feet 1 inch and the other offender as being about 5 feet 4 inches. They described the taller individuals as wearing dark jackets, while the shorter offender, who fired the gun, wore a striped ski jacket. All three were wearing baseball caps. One of the witnesses gave police the name of a person he thought was one of the offenders. Police arrested this suspect and questioned him, but later released him when the same witness said this was not the person he thought.

The five witnesses who testified for the State all made in-court identifications of defendant, who was taken into custody the day after the occurrence. At trial, defendant was wearing his hair in a natural style and it was black. All witnesses testified that the person responsible for the shooting had reddish hair and wore it in a slicked-back butter style and also wore an earring. When giving descriptions of the offenders to the police, none of the witnesses said anything about the hair color or style of the person who shot the victims. One witness stated he did tell detectives at the police station that the person responsible for the shooting had red hair and a light complexion. The witnesses testified that they recalled seeing defendant a few weeks before the shooting at the Bud Billiken Parade and that they remembered his appearance because of his red butter hairstyle and the earring in his left ear.

Jewel Henderson, a friend of defendant's family, testified for defendant that on the day of the shooting, she took defendant to reg-

ister for high school and on that day his hair was black. Defendant did not testify at trial.

To rebut Henderson's testimony, the State sought to introduce a previously suppressed statement of defendant. After a hearing on the voluntariness of defendant's suppressed statement, the trial court, over defendant's objection, permitted the State to introduce the statement.

The suppressed testimony which the trial court allowed in revealed that while in police custody on August 31, defendant stated that on the evening of August 30, his hair was long and combed back straight and reddish brown. He added that he had gone to the beauty parlor to have his hair dyed and curled to change his appearance. The trial court previously suppressed the statement after finding that there was not probable cause to arrest defendant, and thus the statement was the fruit of an unlawful arrest.

Following the police officer's testimony regarding the suppressed statement, the trial court told the jury that such evidence was offered for the purpose of impeaching and rebutting Henderson's testimony. The trial court, however, refused defendant's proffered jury instruction, explaining that defendant's statement could be considered only for purposes of determining the believability of the witness and could not be used substantively.

During rebuttal closing argument, the prosecutor stated, "[T]his case comes to you with five eyewitnesses, an admission that he changed his color—changed the color of his hair." The trial court overruled defendant's objection that this was a substantive use of the suppressed testimony.

■ On appeal, defendant contends it was a violation of his fourth amendment rights to allow his previously suppressed statement to impeach and rebut the testimony of a defense witness. Defendant's statement was suppressed at a pretrial hearing after the judge found it to be the fruit of an unlawful arrest. Defendant did not testify at trial.

The State may use defendant's statement, held inadmissible pursuant to a fourth or fifth amendment violation, to impeach defendant's credibility if defendant takes the stand and testifies. (*Oregon v. Hass* (1975), 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215; *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643; *Walder v. United States* (1954), 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354.) Furthermore, the State may use the suppressed fruits of a fourth amendment violation to impeach defendant's perjurious testimony at trial. (*United States v. Havens* (1980), 446 U.S. 620, 64 L.

Ed. 2d 559, 100 S. Ct. 1912; *People v. Brown* (1976), 40 Ill. App. 3d 1003, 353 N.E.2d 244.) The *Havens* court assessed the competing interests of the truth-seeking function of the courts and the interests sought to be protected by the exclusionary rule and held that a defendant's testimony is subject to impeachment by the government although by evidence that has been illegally obtained and that is inadmissible in the government's direct case in chief as substantive evidence of guilt. There is no justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the government's disability to challenge his credibility. *Walder v. United States* (1954), 347 U.S. 62, 98 L. Ed. 2d 503, 74 S. Ct. 354.

The matter before us differs from these cases in that defendant did not testify. Here, the State seeks to use defendant's suppressed statements to rebut the testimony of another defense witness. When a defendant testifies, courts will allow otherwise inadmissible evidence to prevent a defendant from directly perjuring himself and then hiding behind the fourth or fifth amendment. However, when a defendant has not testified, as is the case here, defendant has taken no affirmative steps which would act in the same way to deprive him of his constitutional rights. In the present case, the statement defendant made regarding the color of his hair was determined to be the fruit of an unlawful arrest, and there is no authority under which such a statement may be used to impeach the testimony of another witness.

The State urges that *People v. Finkey* (1982), 105 Ill. App. 3d 230, 434 N.E.2d 18, is the authority by which this court should allow admission of defendant's statements. In *Finkey*, defendant did not testify at trial, yet the State offered suppressed statements to rebut defendant's insanity defense. In setting out the insanity defense, a psychiatrist testified for the defense that defendant lacked substantial capacity either to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct. This conclusion was based on the doctor's examination of defendant at which defendant told the doctor that he had learned of his own criminal involvement from the hospital personnel. Since this was the basis of the doctor's conclusion, the trial court allowed suppressed testimony of a police officer which showed, through a conversation with defendant, that defendant had some recall of the criminal events. This court held that a defendant cannot be allowed to establish a *prima facie* insanity defense by his representations to a psychiatrist without affording the State an opportunity to challenge the veracity of those statements.

The reasoning of *Finkey* does not extend to the present case. Unlike *Finkey*, the State here is not rebutting an affirmative defense set

up by defendant. Under the guise of impeachment, the State is trying to use inadmissible evidence to rebut the testimony of a defense witness. Defendant did not testify and has not forfeited his fourth amendment rights. See also *United States v. Hinckley* (D.C. Cir. 1982), 672 F.2d 115.

This issue has been addressed by other jurisdictions. In New York, the court has refused to extend the fourth amendment impeachment exception to the examination of a defense witness. (*People v. Walls* (1973), 344 N.Y.S.2d 435, 42 A.D.2d 575.) There, defendant's statement in which he admitted his participation in a felony murder was suppressed because of a *Miranda* violation. Defendant did not testify at trial, but in his defense, his mother testified that she was present at defendant's interrogation and she did not hear him admit his participation in the crime. The State attempted to rebut the mother's testimony with defendant's suppressed statements. The court held, however, that the time-honored device of testing credibility by confronting the witness with prior inconsistent statements would not be available when the witness is not the person who made the statements claimed to be inconsistent. The *Walls* court stated that, if allowed, this would indeed result in a case where the exception swallows up the rule.

In effect, the State is attempting to use evidence obtained in violation of defendant's fourth amendment rights to impeach and rebut a defense witness. We refuse to make such an exception to the exclusionary rule. Were we to hold otherwise, we would provide little or no deterrence against further fourth amendment violations and the State would be able, under the guise of impeachment, to use any illegally obtained evidence relevant to the principal issues in the case.

The State argues that even if the trial court erred in admitting defendant's suppressed statement, such error was harmless in light of the other evidence of defendant's guilt. A reversal on constitutional grounds is not warranted if it can be determined beyond a reasonable doubt that the error was harmless. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) There was ample evidence of defendant's guilt independent of defendant's statements. Nevertheless, identification was a major issue of the case, with defendant questioning the credibility of the State identification witnesses. Defendant's statement, allegedly allowed in only for impeachment purposes, directly reflects on the issue of identification as well as defendant's guilt.

Moreover, not only was the jury allowed to hear defendant's suppressed statement, but the court failed to instruct the jury properly on the use to be made of this evidence. After reciting that defend-

ant's statement was being offered to impeach the defense witness, the court said that the statement was also offered to refute and rebut that testimony. This comment in effect is a substantive use of the evidence. Furthermore, the trial court refused defense counsel's request for further limiting instruction and allowed the State to make substantive use of defendant's suppressed statements in its rebuttal closing argument.

In our view, the jury could not avoid being influenced by the State's improper use of defendant's statement and for that reason we cannot say beyond a reasonable doubt that the error was harmless. We believe that a new trial is required.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the case is remanded for a new trial.

Judgment reversed and remanded.

RIZZI and WHITE, JJ., concur.