NO. 4-02-0667

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellee,

          v.

ALONZO BASS,

          Defendant-Appellant.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Champaign County

  No. 01DT624

     

  Honorable

  Holly F. Clemons,­

  Judge Presiding.

______________________________________________________________ 

JUSTICE TURNER delivered the opinion of the court:

In November 2001, the State charged defendant, Alonzo Bass, with one count of driving while under the influence of alcohol (DUI) and one count of driving with a blood-alcohol concentration of 0.08 or greater.  In June 2002, a jury found defendant guilty of driving with a blood-alcohol concentration of 0.08 or greater.  In August 2002, the trial court denied defendant's posttrial motion and sentenced him to 24 months' conditional discharge.  The court also ordered him to pay $500 in court-appointed attorney fees.

On appeal, defendant argues the trial court erred in (1) allowing the results of the preliminary breath test (PBT) to be admitted in evidence by the State on rebuttal and (2) ordering him to pay $500 for the services of his court-appointed counsel.  We affirm defendant's conviction, vacate the order directing him to pay for court-appointed counsel, and remand with directions.

I. BACKGROUND

In November 2001, the State charged defendant by information with one count of DUI (625 ILCS 5/11-501(a)(2) (West 2000)) and one count of driving with a blood-alcohol concentration of 0.08 or greater (625 ILCS 5/11-501(a)(1) (West 2000)).  Defendant pleaded not guilty.

In June 2002, the State withdrew the DUI charge, and the case proceeded to a jury trial on the remaining count.  Troy Phillips, an officer with the Illinois State Police, testified he was on patrol on March 11, 2001.  At approximately 1:30 a.m., he stopped a car, driven by defendant, for speeding.  Defendant indicated he was coming from the "Grove Street," which Officer Phillips believed was a Rantoul tavern.  When asked if he had been drinking, defendant stated he had two beers.  Officer Phillips described defendant as having "glassy, bloodshot eyes," "a very strong odor of alcohol on and about his person," and slurred speech.  Defendant agreed to participate in field-sobriety tests, and Officer Phillips administered the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged stand test.  Based on defendant's performance on the tests, Officer Phillips believed he was under the influence of alcohol and placed him under arrest.

Upon searching defendant's vehicle, Officer Phillips located "an open bottle of Paul Mason Brandy under the passenger seat."  Phillips noticed a "small amount" of brandy inside the bottle that was "cool to the touch."  Once at the jail, Phillips read the statutory "warning to motorist" to defendant and asked him to take a breath test.  Defendant agreed to do so and Phillips observed him for over a 20-minute period.  Thereafter, Phillips used the Intoximeter ECIR to administer the breath test. 

Richard Bright, a breath-analysis equipment technician with the State Police, testified he is required to test breath-test equipment once within every 62-day period for its accuracy.  He stated he checked and certified the accuracy of the machine used in this case on March 9, 2001.  

The trial court read a stipulation, stating that after defendant "submitted to a breath sample on March 11 of 2001, at 3:09 a.m., the ECIR breath instrument indicated that the [d]efen­dant's blood[-]alcohol concentration was [0].106."  The State then rested its case. 

Defendant testified he and Jimmy Brooks went to the Grove Street Tavern in the late evening of March 10 and the early morning of March 11, 2001.  Defendant testified he may have had "a soda" but nothing alcoholic to drink because he had been sick with the stomach flu and was still taking medicine for it.  After being stopped by the police, defendant "walked normal" during the field-sobriety tests and was not swaying or having trouble maintaining his balance.  When asked on cross-examination if he told Officer Phillips he had two beers that evening, defendant stated, "No, I did not.  I wouldn't do that, if I had.  That just convicted myself."  

Jimmy Brooks testified defendant did not have any alcoholic beverages at Grove Street but just had a Pepsi.  Brooks stated he never had any brandy that evening and did not see any bottles in defendant's car.  

Over defense counsel's objections, the trial court allowed the State to use the results from the PBT for impeachment purposes during rebuttal.  Officer Phillips testified he read the 
Miranda
 warnings (see 
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) 
to defendant, and defendant told the officer he had two beers that evening.  Officer Phillips testified to his training in administering portable breath tests on devices approved by the State Police.  He had defendant submit to a PBT prior to placing him under arrest, which resulted in a reading of 0.120.  

Following closing arguments, the jury found defendant guilty of driving with a blood-alcohol concentration of 0.08 or greater.  In July 2002, defendant filed a motion for new trial, arguing the trial court erred in
, 
inter
 
alia
, permitting the State's use of the PBT results in rebuttal and admitting the testimony without a proper foundation.  In August 2002, the court denied the motion.  Thereafter, the court sentenced defendant to 24 months' conditional discharge, imposed a $200 fine, and ordered him to perform 200 hours of public-service work.  The court called for a hearing on court-appointed attorney fees, and defendant stated he was currently working at Thomas Paine School and earning about $1,100 per month.  The court assessed a $500 court-appointed attorney fee to be paid within 22 months.  This appeal followed.

II. ANALYSIS

A. Preliminary Breath-Test Results as Impeachment in Rebuttal

Defendant argues the trial court erred in allowing the results of the PBT to be admitted into evidence by the State on rebuttal to impeach his testimony.  We agree.

Section 11-501.5 of the Illinois Vehicle Code (Vehicle Code) states, in part, as follows:

"(a) If a law[-]enforcement officer has reasonable suspicion to believe that a person is violating or has violated [s]ection 11-501 or a similar provision of a local ordinance, the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath[-]screening test using a portable device approved by the Department of State Police.  The person may refuse the test.  The results of this preliminary breath[-]screening test may be used by the law[-]enforcement officer for the purpose of assisting with the determination of whether to require a chemical test as authorized under [s]ections 11-501.1 and 11-501.2, and the appropriate type of test to request.  Any chemical test authorized under [s]ections 11-501.1 and 11-501.2 may be requested by the officer regardless of the result of the prelimi­nary breath[-]screening test, if probable cause for an arrest exists.  The result of a preliminary breath[-]screening test may be used by the defendant as evidence in any administrative or court proceeding involving a violation of [s]ection 11-501 or 11-501.1."  625 ILCS 5/11-501.5(a) (West 2000).

In 
People v. Rose
, 268 Ill. App. 3d 174, 176, 643 N.E.2d 865, 867 (1994), this court had to decide whether PBT results were admiss­ible by the State in a criminal proceeding during the State's case in chief.  In looking at section 11-501.5 of the Vehicle Code, the court stated, in part, as follows:

"The language of section 11-501.5 is unclear because it fails to declare whether the State may admit the results of a PBT in a criminal proceeding.  Section 11-501.5 allows the State to use PBT results to determine whether further chemical testing is justified, but the section is silent on whether the State may use PBT results to prove intoxication.  In addition, section 11-501.5 specifies a 
defendant
 may use the results of a PBT in either an administrative or a court proceeding, but is silent on whether the 
State
 may similarly use the results of a PBT."  (Emphasis in original.)  
Rose
, 268 Ill. App. 3d at 178, 643 N.E.2d at 868.

In looking at legislative intent, the court found the primary purpose of section 11-501.5 is "to aid police officers in assess­ing probable cause to arrest."  
Rose
, 268 Ill. App. 3d at 180, 643 N.E.2d at 869.  Although the statutory language would appear to allow the PBT results to be admitted to establish probable cause at the time of arrest (
Rose
, 268 Ill. App. 3d at 180, 643 N.E.2d at 870), "PBT results are not admissible by the State during its case in chief in a criminal proceeding involving a DUI charge" (
Rose
, 268 Ill. App. 3d at 181, 643 N.E.2d at 870).  The court expressed no opinion whether PBT results are admissible by the State to rebut testimony by the defense that the defendant was not intoxicated at the time of arrest or where the State is attempting to impeach the defendant's testimony he was not intoxicated at the time of arrest, or if Department of Public Health regulations were such that a PBT could meet the founda­tional requirements of section 11-501.2 of the Vehicle Code.  
Rose
, 268 Ill. App. 3d at 183, 643 N.E.2d at 871-72.

Since 
Rose
, several courts have considered the reach of section 11-501.5 of the Vehicle Code.  In 
People v. Halsey
, 273 Ill. App. 3d 160, 163, 652 N.E.2d 434, 436 (1995), this court held PBT results were admissible in evidence by the State involving offenses not arising under section 11-501 or 11-501.1 of the Vehicle Code.  In 
People v. Davis
, 296 Ill. App. 3d 923, 928, 695 N.E.2d 1363, 1366 (1998), the Third District found, based on the statute, PBT results were admissible in a proceeding where a police officer's probable-cause determination was being challenged.  In 
People v. Brooks
, 334 Ill. App. 3d 722, 729, 778 N.E.2d 336, 342 (2002), the Fifth District found testimony concerning a defendant's refusal to submit to a PBT was inadmissible in the State's case in chief.  In 
People v. Rozela
, 345 Ill. App. 3d 217, 227, 802 N.E.2d 372, 380 (2003), the Second District reviewed a case involving a petition to rescind a statutory summary suspension and found section 11-501.5 permitted the State to introduce PBT results to support the officer's conclusion he had probable cause to arrest defendant for DUI.

In the case 
sub
 
judice
, we are confronted with the issue of whether the Vehicle Code permits the State to use PBT results in its rebuttal for the limited purpose of impeaching defendant's testimony that he had not consumed any alcohol.  The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
People v. Latona
, 184 Ill. 2d 260, 269, 703 N.E.2d 901, 906 (1998).  The words of a statute are to be given their plain and commonly understood meanings.  
Krohe v. City of Bloomington
, 329 Ill. App. 3d 1133, 1135-36, 769 N.E.2d 551, 553 (2002).

The language of the statute clearly allows a defendant to use PBT results as evidence in a criminal trial.  Courts have also found the language allows the State to introduce PBT results to show the existence of probable cause at the time of arrest.  
Rozela
, 345 Ill. App. 3d at 227, 802 N.E.2d at 380; 
Davis
, 296 Ill. App. 3d at 928, 695 N.E.2d at 1366; 
Rose
, 268 Ill. App. 3d at 180, 643 N.E.2d at 869.  However, the statute makes no mention of the State's use of PBT results in rebuttal to impeach the defendant's testimony.  Considering the maxim 
expressio
 
unius
 
est
 
exclusio
 
alterius
, meaning the expression of one thing implies the exclusion of another, we find the language of the Vehicle Code does not allow for such use by the State.  Had the legislature intended PBT results to be admissible in this situation, it could and should have explicitly said so in the statute.  As we find no statutory authority for the State's use of the PBT results in this case, we find the trial court erred in admitting the results in the State's rebuttal.

Even accepting defendant's contention that the trial court erred in allowing the PBT results to be used by the State in its rebuttal, we conclude any error was harmless.  Under a harmless-error analysis, the burden is on the State to prove the jury verdict would have been the same absent the error to avoid reversal.  
People v. Crespo
, 203 Ill. 2d 335, 347, 788 N.E.2d 1117, 1124 (2001) (supplemental opinion filed on denial of rehearing 2003).

Here, Officer Phillips testified he stopped defendant for speeding and noticed his "glassy, bloodshot eyes" with "a very strong odor of alcohol" on him and slurred speech.  Based on defendant's performance on the field-sobriety tests, Officer Phillips believed he was under the influence of alcohol.  Phillips also located an open bottle of brandy under the passenger seat that was "cool to the touch," and the passenger denied it belonged to him.  At the jail, defendant's blood-alcohol concentration measured 0.106.  Based on Officer Phillips's testimony concerning defendant's condition at the time of the traffic stop and defendant's blood-alcohol reading at the jail, the evidence establishes defendant was guilty of driving with a blood-alcohol concentration greater than 0.08.  Thus, as the State's rebuttal evidence was harmless, a new trial is not required.­

B. Payment for Court-Appointed Counsel

Defendant argues the trial court erred in ordering him to pay $500 for the services of his court-appointed counsel.  We agree.

At the conclusion of the sentencing hearing, the trial court stated, in part, as follows:

"THE COURT:  Cause called for hearing as to court-appointed attorney fees.  Mr. Bass, are you currently employed[?]

MR. BASS:  Yes.

THE COURT:  Where are you working?

MR. BASS:  Thomas Paine School.

THE COURT:  All right.  And how much are you earning per month?

MR. BASS:  About [$]1100.

THE COURT:  All right.  I will assess a court-appointed attorney fee of [$500] due to the fact that Mr. Appleman has had to prepare for an extensive jury trial in this matter.  

Mr. Bass, you'll need to pay that within 22 months from this date.  

Mr. Appleman, I'll tender the payment order for court-appointed attorney."

Defendant's March 2002 affidavit requesting an appointed attorney indicated he earned $800 per month as a janitor and paid $50 per month in child support. 

Section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/113-3.1(a) (West 2000)) requires a trial court to conduct a hearing as to the defendant's financial resources to determine his ability to pay reimbursement for court-appointed counsel.  
People v. Love
, 177 Ill. 2d 550, 556, 687 N.E.2d 32, 35 (1997).  

"At the hearing, the trial court is to consider the affidavit prepared by [the] defendant in seeking court-appointed counsel.  725 ILCS 5/113-3.1(a) (West 2000).  In addition, the defendant must (1) have notice that the trial court is considering imposing a payment order pursuant to section 113-3.1 of the [Criminal Procedure] Code and (2) be given the opportunity to present evidence regarding her ability to pay and other relevant circumstances and otherwise be heard regarding whether the court should impose such an order.  
People v. Johnson
, 297 Ill. App. 3d 163, 164-65, 696 N.E.2d 1269, 1270 (1998).  The trial court may not simply order reimbursement in a perfunctory manner."  
People v. Roberson
, 335 Ill. App. 3d 798, 803-04, 780 N.E.2d 1144, 1148 (2002).  

In this case, the only notice given by the trial court was its call for a hearing on court-appointed counsel fees and the two questions to defendant about his employment and earnings per month.  The record does not show the court considered defen­dant's financial affidavit.  Further, defendant was not given an opportunity to present evidence or be heard regarding the imposi­tion of the $500 payment.  Therefore, we must vacate the court's order requiring defendant to pay $500 for court-appointed counsel fees and remand for a hearing on defendant's ability to pay for such services pursuant to section 113-3.1 of the Criminal Procedure Code.

III. CONCLUSION

For the reasons stated, we affirm defendant's conviction and vacate the recoupment order and remand with directions.

Affirmed in part and vacated in part; cause remanded with directions.

KNECHT, P.J., concurs.

MYERSCOUGH, J., specially concurs.

JUSTICE MYERSCOUGH, specially concurring:

I would affirm the trial court on all grounds.

The PBT results should be admissible to impeach defendant's and Brooks's testimony that defendant had not consumed any alcoholic beverage.  The trial court clearly limited the use of the PBT results to impeachment only.  This evidence is therefore relevant to an issue in the case, and it should be admitted because its admission does not contravene statutory law or a rule of evidence.  See 
Halsey
, 273 Ill. App. 3d at 163-64, 652 N.E.2d at 436.  

Similarly, use of illegally obtained evidence, otherwise inadmissible, may be used to impeach defendant and his witness where defendant testifies.  See 
People v. James
, 153 Ill. App. 3d 131, 133, 505 N.E.2d 1118, 1119 (1987); 
People v. Campbell
, 332 Ill. App. 3d 721, 724, 773 N.E.2d 776, 779 (2002).  If defendant's otherwise inadmissible items of evidence may be admitted for impeachment purposes, so should the PBT results.  

Moreover, because these PBT results were not used as substantive evidence to establish intoxication, but only as impeachment, they should not be subjected to the standards of admissibility to establish intoxication.  If the results may be used to establish probable cause, they should be allowed to establish impeachment, especially where PBT results are not considered inherently unreliable (
Halsey
, 273 Ill. App. 3d at 163-64, 652 N.E.2d at 436).  Further, the proper foundation for this impeachment was provided:

"Q.  Okay, did you have a portable breath[-]testing device with you in your squad car on March 11th of 2001?

A.  Yes, I did.

Q.  And is that portable breath test routinely certified as accurate?

A.  Yes.  Every ninety days we turn it into [
sic
] the district headquarters in Pesotum, where they then certify it.

* * *

Q.  Did you have the [d]efendant submit to a portable breath test on March 11th of 2001, prior to placing him under arrest?

A.  Yes, I did.

Q.  And what was the result of that portable breath test?

MR. APPLEMAN:  Objection.  Foundation.

THE COURT:  Overruled.

THE WITNESS:  .120."

For these reasons, I would affirm the trial court on all issues, and I specially concur.