THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ALAN D. ROSE, Defendant-Appellee.

Fourth District   No. 4—94—0345

Opinion filed December 8, 1994.

Richard J. Ringhausen, State's Attorney, of Jerseyville (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Alan Rose, defendant, was charged with driving under the influence of alcohol (DUI), a violation of section 11—501 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501 (West 1992)). Prior to his

trial, defendant made a motion *in limine* to exclude from evidence the results of a preliminary breathalyzer test (PBT) given to him pursuant to section 11—501.5 of the Code (625 ILCS 5/11—501.5 (West 1992)). The trial court granted the motion *in limine,* and the State appeals. We affirm.

The following facts are not in dispute. On April 23, 1993, defendant was arrested for DUI and speeding. On February 14, 1994, defendant filed a motion *in limine* to exclude from his trial evidence obtained from a PBT given him at the time of the arrest. Defendant alleged the State had no statutory or other authority to admit the results of a PBT in the State's case in chief or during rebuttal.

A hearing on the motion was held, and the parties stipulated to the following facts:

"1. On April 23, 1993, at 10:22 p.m., Illinois State Trooper Juan Lingow stopped a motorcycle driven by defendant Alan B. Rose on Illinois Route 16 in Jersey County, Illinois.

2. Trooper Lingow would testify as follows:

a. That he stopped defendant for the offense of speeding (64 in a 55) and that while stopping defendant, observed defendant cross the centerline before pulling onto the shoulder.

b. That he detected a moderate odor of an alcoholic beverage coming from defendant's breath and observed defendant to be unsteady on his feet.

c. That defendant refused to perform field[-]sobriety tests stating that defendant had had too much to drink and would fail it anyway.

d. That at 10:41 p.m., Trooper Lingow administered a preliminary breath test to defendant with an ALCO-SENSOR (digital read-out) [PBT] unit, manufactured by Intoximeters, Inc., 1901 Locust Street, St. Louis, Missouri 63101; said test disclosing a [blood-alcohol content (BAC)] of .156.

e. That the above[-]described [PBT] unit had been certified as accurate on April 16, 1993[,] and May 21, 1993[,] to within error not in excess of plus or minus .01; that the unit was operated in accordance with manufacturer's specifications and operating procedures.

f. That Trooper Lingow placed defendant under arrest for the offenses of Speeding and DUI.

g. That at 11:55 p.m. Trooper Lingow read the Statutory Warning to Motorist to defendant; that at 12:19 a.m., April 24, 1993, defendant tested .14 BAC on the Intoxilizer 5000 breath test unit at the Jersey County Sheriff's Office.

h. That Trooper Lingow was at the time of the arrest [a] certified Breath Analyzer Operator, and that his training included a course on the operation of the [PBT] unit.

3. That in complying with discovery, defendant notified the State that he intended to call an expert witness to testify as to the expert's opinion regarding defendant's BAC at the time of the arrest as opposed to the time of the test.

4. That in complying with discovery, the State notified the defendant that it intends to use the results of the preliminary breath test in either its case in chief or as rebuttal evidence should defendant claim that his [BAC] was less than .10 at the time of the arrest."

The trial court granted the defendant's motion *in limine* to exclude the results of the PBT in the State's case in chief or during rebuttal. The court entered a written order:

"Cause called for determination of defendant's Motion in Limine. The court having considered the arguments of counsel, the stipulated facts, the applicable statutory provisions, and the cases submitted finds that the Motion should be allowed. The court is of the opinion that the results of a preliminary breath screening test pursuant to Section 11—501.5 of the Vehicle Code are not admissible in the State's case in chief or in rebuttal.

It appears that the purpose of the test is to aid the law enforcement officer in determining whether to require a chemical test as authorized by Sections 11—501.1 and 11—501.2. The procedures for administering this preliminary test using the portable device are not as stringent as the procedures for administering the 'regular' breath test and therefore the results cannot be considered to be as reliable. Moreover, Section 11—501.5 provides that 'The results of a [PBT] may be used by the defendant as evidence in any administrative or court proceeding involving a violation of Section 11—501 or 11—501.1.' This suggests to the court that the test may not be used by the State as evidence. This interpretation appears to comport with common sense and logic. In fact, Section 11—501.6, concerning vehicular accidents involving personal injury, specifically provides in subsection (e) that 'The results of any test or tests administered pursuant to this Section, *other* than a test conducted with a portable device, may be used in any civil or criminal action.' (Emphasis supplied[.])"

The State filed a notice of appeal and certificate of impairment. The sole issue on appeal is whether results of a PBT are admissible by the State in a criminal proceeding during the State's case in chief or during rebuttal. Although defendant has failed to file a brief, the record is simple and the claimed error can be decided without the aid of an appellee brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.

Section 11—501.5 of the Code now states:

"Preliminary Breath Screening Test. If a law enforcement officer has reasonable suspicion to believe that a person is violating or has violated Section 11—501 or a similar provision of a local ordinance, the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a portable device approved by the Department of Public Health. The results of this preliminary breath screening test may be used by the law enforcement officer for the purpose of assisting with the determination of whether to require a chemical test as authorized under Sections 11—501.1 and 11—501.2, and the appropriate type of test to request. Any chemical test authorized under Sections 11—501.1 and 11—501.2 may be requested by the officer regardless of the result of the preliminary breath screening test, if probable cause for an arrest exists. The result of a preliminary breath screening test may be used by the defendant as evidence in any administrative or court proceeding involving a violation of Section 11—501 or 11—501.1." (625 ILCS 5/11—501.5 (West Supp. 1993).)

To date, no court has resolved the issue whether, under section 11—501.5, results of a PBT are admissible by the *State* in any administrative or court proceeding. Two courts have declined to consider this issue: one because the defendant had waived the issue by failing to object at trial (*People v. Mayo* (1990), 203 Ill. App. 3d 328, 330-31, 561 N.E.2d 287, 289), and the other because resolution of the issue was not necessary to the outcome of the case (*People v. Hood* (1994), 265 Ill. App. 3d 232, 247, 638 N.E.2d 264, 275).

Although *Hood* did not resolve the issue, this court's discussion of the purpose behind section 11—501.5 is relevant here. In *Hood*, the defendant challenged the admissibility of PBT results used by the State in an implied-consent proceeding to show probable cause. The court noted under section 11—501.5,

"where the officer has probable cause to believe the motorist is under the influence of some substance, but is uncertain whether that substance is alcohol which would be detected in a breathalyzer test, or cannabis or a controlled substance which would not be detected in a breathalyzer test, the officer may utilize the PBT to assist him in the determination of whether to request the motorist to submit to a breathalyzer test or another chemical test." (*Hood*, 265 Ill. App. 3d at 246, 638 N.E.2d at 274.)

However, since *Hood*, and prior to defendant's motion to suppress, the legislature amended section 11—501.5 of the Code to allow a PBT to be administered if the officer has *reasonable suspicion* to believe a person has violated section 11—501. (See Pub. Act 88—169, § 1, eff. January 1, 1994 (1993 Ill. Laws 2121).) In other words, police officers

may now use the PBT in the same manner as other field-sobriety tests, *i.e.*, to determine whether probable cause exists to arrest for committing the offense of DUI. It seems the results of a PBT therefore should be admissible at least in an implied-consent proceeding to show probable cause, but still to be resolved is the issue whether the amended section 11—501.5 allows the State to use evidence from a PBT against a defendant in a criminal proceeding.

The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature. In determining the legislative intent, a court should first consider the statutory language. Where the statutory language is clear, it will be given effect without resort to other aids for construction. However, where the language is ambiguous, it is appropriate to examine the legislative history. *People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197, 607 N.E.2d 1251, 1253.

The language of section 11—501.5 is unclear because it fails to declare whether the State may admit the results of a PBT in a criminal proceeding. Section 11—501.5 allows the State to use PBT results to determine whether further chemical testing is justified, but the section is silent on whether the State may use PBT results to prove intoxication. In addition, section 11—501.5 specifies a *defendant* may use the results of a PBT in either an administrative or a court proceeding, but is silent on whether the *State* may similarly use the results of a PBT. As the trial court correctly noted in discussing this, the expression of one thing in an enactment generally excludes all others (*expressio unius est exclusio alterius*), even where there are no negative words of prohibition. However, this rule of statutory construction is not a rule of law, but merely an aid used by courts to determine legislative intent. (*In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381, 387, 604 N.E.2d 929, 932.) Thus, the rule may be overcome by a strong indication of contrary legislative intent. *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 555, 591 N.E.2d 427, 429.

In determining legislative intent, a court may properly consider not only the language used in the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. (*People v. Chandler* (1989), 129 Ill. 2d 233, 253, 543 N.E.2d 1290, 1298.) A court may also consider relevant statements by legislators concerning the nature and effect of the proposed law. (*Sulser*, 147 Ill. 2d at 555, 591 N.E.2d at 429.) After a thorough examination of the legislature's intent, the judiciary possesses the authority to read language into a statute which the court believes the legislature omitted through legislative oversight. (*Chandler*, 129

Ill. 2d at 253, 543 N.E.2d at 1298.) Having considered the language of section 11—501.5, we will now examine the purpose and legislative history of the section.

A transcript of the General Assembly proceeding shows little debate on the original legislation. Senate Bill 1283, which became section 11—501.5, passed the Senate without debate. (85th Ill. Gen. Assem., Senate Proceedings, May 13, 1987, at 95-96.) In the House of Representatives, Representative Matijevich, the House sponsor of Senate Bill 1283, participated in the following colloquy on the floor of the House:

> "Matijevich: 'Yes, Mr. Speaker, Senate Bill 1283 is the Bill to authorize the use of portable breathalyzer devices and was prepared by the Illinois Association of Chiefs of Police. It is a particular help for law enforcement officers in rural areas where officers may have to transport individuals 30 or more miles to an *evidential* test site only to find that the results are too low. The preliminary breath screening devices are utilized with success in several states, including Wisconsin and Michigan ***. ***'
>
> * * *
>
> Young: 'If the motorist passes the preliminary test, can the police officer still make him take the other test?'
>
> Matijevich: 'Yes. Yes, they could still... if there are other reasons why the arresting officer feels that there is evidence enough to arrest, they can. But in more cases than not, probably, if one passes the test, then the officer won't take them to the *evidential* site. So, it can be a protection for the person.'
>
> Young: 'Are these preliminary tests admissible in court?'
>
> Matijevich: 'Yes, they are admissible. The defense can use these tests in court or in an administrative hearing.'
>
> Young: '*Can the prosecution use them in court?*'
>
> Matijevich: '*Yes.*' " (Emphasis added.) (85th Ill. Gen. Assem., House Proceedings, June 26, 1987, at 396-97 (statements of Representatives Matijevich and Young).)

The State relies heavily on this last question and answer in arguing PBT results are admissible to prove intoxication in a criminal proceeding. However, the legislators did not discuss *under what circumstances* the prosecution could use PBT results, and so the State overrelies on these remarks. Significantly, Representative Matijevich seemed to distinguish between the PBT and the "*evidential*" breathalyzer test.

Two representatives rose in opposition to the bill. Neither disputed Representative Matijevich's assertion the State would be able to use results from a PBT in court. In fact, Representative Countryman opposed the bill precisely *because* the PBT results would be admissible by the State:

"Countryman: 'Well, I may be the only one who stands in opposition to the Bill, but I'm concerned about these machines not being tested in the same manner that the other breathalyzer machines are tested. Inaccurate material that can... *that's admissible in court, either way,* is bad material.' " (Emphasis added.) (85th Ill. Gen. Assem., House Proceedings, June 26, 1987, at 397-98 (statements of Representative Countryman).)

Transcripts of the floor proceedings on the bill to *amend* section 11—501.5 show even less debate:

"[Representative] Parke: 'Thank you, Mr. Speaker, Ladies and Gentleman of the House. Amended at the request of the State Bar Association, House Bill 2294 places the primary breath test device in its intended place in the DUI arrest process. *These tests are used to develop probable cause for the arrest* and there is no penalty for refusing any of these tests. This change does not affect the state[']s Implied Consent Law.' " (Emphasis added.) (88th Ill. Gen. Assem., House Proceedings, April 20, 1993, at 22 (statements of Representative Parke).)

House Bill 2294 passed the House and Senate unopposed.

Based on legislative remarks concerning section 11—501.5, it seems its primary purpose is to aid police officers in assessing probable cause to arrest. Section 11—501.5 addresses the problem when a police officer *incorrectly believes* a person's blood-alcohol content meets the statutory standard for intoxication, and the officer then *wastes his or her valuable law enforcement time* driving to the test site only to find the person is not intoxicated according to the legal definition, or the drug with which the person is intoxicated does not register on the evidential breathalyzer test. This problem of wasting law enforcement time would be exacerbated in rural areas, giving meaning to Representative Matijevich's statement "[section 11—501.5] is a particular help for law enforcement officers in rural areas where officers may have to transport individuals 30 or more miles to an evidential test site only to find that the results are too low." (85th Ill. Gen. Assem., House Proceedings, June 26, 1987, at 396 (statements of Representative Matijevich).) Section 11—501.5 allows a police officer to make an *initial* determination regarding the blood-alcohol content of a person so the officer will know whether to arrest a person, whether to take the time necessary to drive the person to the evidential test site, and whether to administer a test for alcohol or some other drug. It appears, then, that the results of a PBT would be admissible to show probable cause existed at the time of arrest. This interpretation is consistent with the understanding of the legislators that the results would be admissible by the prosecution.

Returning to the language of section 11—501.5, the section allows a defendant to use PBT results in a criminal proceeding but the section does not declare the State may similarly use PBT results. Also, section 11—501.5 allows the police to use PBT results to determine whether other tests are justified, but the section does not declare the State may use PBT results for other reasons. There is no legislative history indicating PBT results are admissible to prove intoxication in the State's case in chief in a criminal proceeding involving a DUI charge. Therefore, the rule of statutory construction declaring the expression of one thing excludes all others has not been overcome by a strong indication of contrary legislative intent. PBT results are not admissible by the State during its case in chief in a criminal proceeding involving a DUI charge.

We note this interpretation of section 11—501.5 is bolstered by comparison to the PBT statutes in other States upon which Representative Matijevich noted section 11—501.5 was patterned. In Michigan, PBT's are admissible *only* to show the validity of an arrest. (Mich. Comp. Laws Ann. § 257.625a (West Supp. 1994).) Similarly, in Wisconsin, PBT results may be used by the State *only* to show probable cause. Wis. Stat. Ann. § 350.102(3) (West 1991).

The State, however, argues that under amended section 11—501.5, PBT's have been given the role of a field-sobriety test. Generally, field-sobriety tests are admissible not only in proceedings to determine whether probable cause existed, but also in criminal proceedings to prove intoxication. (See *People v. Buening* (1992), 229 Ill. App. 3d 538, 592 N.E.2d 1222 (horizontal gaze nystagmus test); *People v. Sides* (1990), 199 Ill. App. 3d 203, 556 N.E.2d 778 (finger-to-nose, walk-and-turn, and one-leg-stand tests).) A critical difference exists, however, between the aforementioned tests and a PBT. Each of the other field-sobriety tests mentioned involves testing a person's *behavior*. A PBT, however, instead is in the same category as other breath, blood, or urine tests which scientifically measure an aspect of a person's *body chemistry*.

Because of the scientific nature of tests measuring a person's body chemistry, the Illinois General Assembly has codified procedural safeguards as a condition to the admission into evidence of body chemistry tests under certain circumstances. Section 11—501.2 of the Code states:

> "Chemical and other tests. (a) Upon the trial of any civil or criminal action or proceeding *arising out of an arrest for an offense as defined in Section 11—501* or a similar local ordinance or proceedings pursuant to Section 2—118.1, evidence of the concentration of alcohol, other drug or combination thereof in a

person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, *shall be admissible*. Where such test is made the following provisions shall apply:

1. Chemical analyses of the person's blood, urine, breath or other bodily substance *to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health* in consultation with the Department of State Police by an individual possessing a valid permit issued by that Department for this purpose. The Director of the Department of Public Health in consultation with the Department of State Police is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, to issue permits which shall be subject to termination or revocation at the discretion of that Department and to certify the accuracy of breath testing equipment. The Illinois Department of Public Health shall prescribe regulations as necessary to implement this Section." (Emphasis added.) (625 ILCS 5/11—501.2(a)(1) (West 1992).)

Pursuant to section 11—501.2, the Department of Public Health has issued extensive regulations governing body chemistry tests. (See 77 Ill. Adm. Code §§ 510.10 through 510.120 (1994).) Chemical test results are admissible under section 11—501.2 only if the State can show the test complied with all the proper statutory and regulatory standards. *People v. Orth* (1988), 124 Ill. 2d 326, 340, 530 N.E.2d 210, 216-17.

PBT's, however, are much less regulated. (77 Ill. Adm. Code § 510.130 (1994).) Most importantly, *none of the devices approved as PBT devices are approved as evidential devices*. (Compare 77 Ill. Adm. Code § 510.130(e) (1994) (approved PBT devices) with 77 Ill. Adm. Code § 510.40(b) (1994) (approved evidential breath test devices).) The trial court noted PBT's may be administered under less stringent standards than evidential tests and considered this fact in excluding the PBT result from admission. The State, on the other hand, argues PBT results should be admissible *precisely because* the more stringent standards of section 11—501.2 do not apply to PBT's. Section 11—501.5 requires only that the PBT device be approved by the Department of Public Health as a portable breathalyzer device. Therefore, the State argues, PBT results should be admissible as long as the PBT was an approved device and the PBT test results meet general standards of evidence admissibility.

The State relies on *People v. Keith* (1992), 148 Ill. 2d 32, 591 N.E.2d 449, for this proposition. In *Keith*, the defendant was charged with reckless homicide. He sought to bar breathalyzer test results

from evidence because the results did not comply with the foundational requirements of section 11—501.2. The Supreme Court of Illinois observed section 11—501.2 declares its standards for admissibility apply *only* if the action or proceeding arose out of an arrest for an offense defined in section 11—501. Because reckless homicide was not an offense defined in section 11—501, the State could use the breathalyzer test results as long as the results met the general admissibility rules of evidence rather than the stringent foundational standards of section 11—501.2.

*Keith* directly contradicts the State's contention PBT results under section 11—501.5 are not governed by the same admissibility requirements as section 11—501.2 in the case at hand. Here, defendant is charged with DUI, an offense defined in section 11—501. The proceeding at issue is a criminal prosecution for that offense, and so the proceeding arises out of an arrest for an offense defined in section 11—501. Therefore, contrary to the State's contention, the admissibility requirements of section 11—501.2 apply to the results of *any* breathalyzer test, including a PBT, in the proceeding at issue here. Because none of the devices approved as PBT devices is approved as an evidential device, no PBT result could possibly meet the admissibility requirements of section 11—501.2 in the case at hand. The trial court did not err by excluding evidence of the PBT from the State's case in chief.

We express no opinion whether PBT results are admissible by the State in a criminal proceeding to *rebut* testimony or other evidence put forth by the defense that the defendant was not intoxicated at the time of the arrest. This issue has not been adequately addressed by the State in its brief, so we decline to resolve it.

We also express no opinion whether the result of this case would be different if the State were merely attempting to impeach the defendant's testimony that the defendant was not intoxicated at the time of the arrest, if the proceeding at issue did not arise out of an arrest for an offense defined in section 11—501, or if Department of Public Health regulations were such that a PBT could meet the foundational requirements of section 11—501.2. Judgment affirmed.

Affirmed.

COOK and McCULLOUGH, JJ., concur.