THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ANTHONY T. DAVIS, Defendant-Appellee.

Third District   No. 2—97—0946

Opinion filed June 4, 1998.

924

HOLDRIDGE, J., dissenting.

Gary L. Spencer, State's Attorney, of Morrison (John X. Breslin and Judith Z. Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James W. Mertes (argued), of Pignatelli & Liston, of Rock Falls, for appellee.

JUSTICE SLATER delivered the opinion of the court:
This case presents a single issue: whether the results of a prelim-

inary breath screening test (PBT) obtained pursuant to section 11—501.5 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501.5 (West 1996)) are admissible by the State at a hearing on defendant's motion to suppress evidence and quash his arrest for driving under the influence of alcohol (DUI) (625 ILCS 5/11—501 (West 1996)). We hold that such results are admissible.

## Facts

On January 22, 1997, a van driven by defendant Anthony T. Davis was stopped by Officer Thomas Hochbaum of the Fulton police department because of an equipment violation. According to Hochbaum, the defendant's eyes were bloodshot, his breath smelled of alcohol and he admitted that he had "had a few." Hochbaum administered three field sobriety tests which, in Hochbaum's opinion, the defendant either failed or failed to complete. Defendant also failed a PBT. After the defendant was arrested for DUI, he submitted to a breathalyzer examination which showed a blood-alcohol concentration of 0.15.

Defendant subsequently filed a petition to rescind his statutory summary suspension in which he argued, *inter alia*, that Officer Hochbaum did not have reasonable grounds to believe that defendant was under the influence of alcohol. At the hearing on the motion, the State sought to introduce the fact that defendant had failed the PBT. However, defendant's objection on the basis of lack of foundation was sustained. The trial court later granted defendant's rescission motion. The State did not appeal from that decision and it is not at issue here.

Thereafter, defendant filed a motion to quash arrest and suppress evidence, contending that Officer Hochbaum did not have probable cause to arrest him and that the results of the breathalyzer test should be suppressed. At the hearing on the motion, the parties stipulated that the evidence presented at the rescission hearing would be admitted and considered as evidence on the motion to quash arrest and suppress evidence. In addition, the State introduced Illinois Department of Public Health regulations which listed the type of instrument used by Officer Hochbaum as an approved PBT device. Officer Hochbaum testified that he requested a breath sample from the defendant prior to arrest to help him determine whether or not the defendant was under the influence of alcohol.

The trial court found that, although the State had established a sufficient foundation, the results of the PBT were nevertheless inadmissible. The court ruled that the language of section 11—501.5 did not authorize use of the results of a PBT to determine whether

probable cause existed. The court also noted that while section 11—501.5 expressly allows a *defendant* to use the results of a PBT in any administrative or court proceeding, no similar authorization is given to the *State*. Because this additional evidence was ruled inadmissible, the court found that Officer Hochbaum did not have probable cause to arrest the defendant and the defendant's motion was granted. On appeal, the sole issue raised by the State is whether the trial court erred in ruling that the results of the PBT were inadmissible.

## Analysis

■ The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature. *People ex rel. Baker v. Cowlin*, 154 Ill. 2d 193, 607 N.E.2d 1251 (1992). The most reliable indicator of legislative intent is the language of the statute (*People v. Tucker*, 167 Ill. 2d 431, 657 N.E.2d 1009 (1995)), and any inquiry should begin with that language (*People v. Zaremba*, 158 Ill. 2d 36, 630 N.E.2d 797 (1994); *Baker*, 154 Ill. 2d 193, 607 N.E.2d 1251). Where the statutory language is clear, it will be given effect without relying on other aids for construction. Where the language is ambiguous, however, it is appropriate to consider the legislative history. *Zaremba*, 158 Ill. 2d 36, 630 N.E. 2d 797; *Baker*, 154 Ill. 2d 193, 607 N.E.2d 1251. In addition, a court should consider the reason and necessity for the law, the evils it was intended to remedy and the objects and purposes to be obtained. *Tucker* 167 Ill. 2d 431, 657 N.E.2d 1009; *People v. Garrett*, 136 Ill. 2d 318, 555 N.E.2d 353 (1990). Statutory construction is a question of law to be decided by the reviewing court independent of, and without deference to, the judgment of the trial court. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 678 N.E.2d 1009 (1996).

■ Section 11—501.5 of the Code states:

"Preliminary Breath Screening Test. If a law enforcement officer has reasonable suspicion to believe that a person is violating or has violated Section 11—501 or a similar provision of a local ordinance, the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a portable device approved by the Department of Public Health. The results of this preliminary breath screening test may be used by the law enforcement officer for the purpose of assisting with the determination of whether to require a chemical test as authorized under Sections 11—501.1 and 11—501.2, and the appropriate type of test to request. Any chemical test authorized under Sections 11—501.1 and 11—501.2 may be requested by the officer regardless of the result of the preliminary

breath screening test, if probable cause for an arrest exists. The result of a preliminary breath screening test may be used by the defendant as evidence in any administrative or court proceeding involving a violation of Section 11—501 or 11—501.1." 625 ILCS 5/11—501.5 (West 1996).

We first consider whether the language of the statute is reasonably clear or whether some ambiguity exists. Section 11—501.5 provides that a police officer who reasonably suspects that a person is DUI may request that person to submit to a PBT. The results of the PBT may be used by the officer to assist in determining "whether to require a chemical test as authorized under Sections 11—501.1 [statutory summary suspension; implied consent] and 11—501.2 [concerning admissibility of chemical test results in DUI prosecutions], and the appropriate type of test to request." 625 ILCS 5/11—501.5 (West 1996). The defendant maintains that this language limits use of PBT results to the purposes expressed in the statute and does not permit their use for any other purpose. The State contends, however, that since the chemical tests authorized under sections 11—501.1 and 11—501.2 require a determination by the officer of probable cause to arrest for DUI, the purpose of section 11—501.5 is to assist the officer in making the probable cause determination. In that case, the State argues, the PBT results are necessarily admissible in a proceeding challenging the existence of probable cause.

■ "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses, thus warranting the consideration of other sources to ascertain the legislative intent." *Advincula*, 176 Ill. 2d at 18, 678 N.E.2d at 1018. We find that section 11—501.5 is ambiguous concerning the purpose of a PBT and whether the results of a PBT may be used by the State to establish probable cause. Faced with this ambiguity, we consider the legislative history of the statute.

Representative Matijevich, the House sponsor of Senate Bill 1283, which became section 11—501.5, stated on the floor of the House that PBTs would be particularly helpful in rural areas where police officers might have to transport a DUI suspect long distances to an evidentiary test site. When asked whether the test results were admissible in court, Matijevich responded that a defendant could use the results in court or at an administrative hearing. He was then asked, "Can the prosecution use them in court?" and he answered, "Yes." 85th Ill. Gen. Assem., House Proceedings, June 26, 1987, at 397 (statements of Representatives Matijevich and Young).

Section 11—501.5, as it was originally enacted, required a police officer to have *probable cause* to believe that a person was DUI before

administering a PBT. This was changed to the current requirement of *reasonable suspicion* by House Bill 2294, which, according to Representative Parke's statement on the House floor, placed the PBT "in its intended place in the DUI arrest process. *These tests are used to develop probable cause for the arrest* \*\*\*." (Emphasis added.) 88th Ill. Gen. Assem., House Proceedings, April 20, 1993, at 22 (statements of Representative Parke).

■ While the comments by Representatives Matijevich and Parke do not provide a definitive explanation of the "reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained" (*Garrett*, 136 Ill. 2d at 329, 555 N.E.2d at 358), they are sufficiently indicative of legislative intent to resolve the issue presented here. We believe that the primary purpose of section 11—501.5 is, as the State suggests, to aid police officers in determining the existence of probable cause to arrest. This is evident from Representative Parke's statement concerning the amendment to section 11—501.5. That amendment lowered the threshold requirement for a PBT from probable cause to reasonable suspicion, thereby allowing it to be used as an investigative tool, similar to field sobriety tests. Our conclusion in this regard is consistent with that of the court in *People v. Rose*, 268 Ill. App. 3d 174, 180, 643 N.E.2d 865, 869-70 (1994):

> "Based on legislative remarks concerning section 11—501.5, it seems its primary purpose is to aid police officers in assessing probable cause to arrest. \*\*\* Section 11—501.5 allows a police officer to make an *initial* determination regarding the blood-alcohol content of a person so the officer will know whether to arrest a person, whether to take the time necessary to drive the person to the evidential test site, and whether to administer a test for alcohol or some other drug. It appears, then, that the results of a PBT would be admissible to show probable cause existed at the time of arrest. This interpretation is consistent with the understanding of the legislators that the results would be admissible by the prosecution." (Emphasis in original.)

We also agree with the *Rose* court that the results of a PBT are admissible on the issue of probable cause. Since the purpose of a PBT is to aid a police officer in determining the existence of probable cause, the results of the PBT must be admissible in a proceeding where that determination is challenged. Probable cause exists where the facts and circumstances known to the arresting officer are sufficient to warrant a man of reasonable caution to believe an offense was committed. *People v. Bulman*, 212 Ill. App. 3d 795, 571 N.E.2d 850 (1991). Section 11—501.5 allows an officer to consider PBT results as one of those "facts and circumstances." Therefore, when the issue

is the correctness of the officer's probable cause determination, he must be allowed to demonstrate the bases for his belief, including PBT results. To hold otherwise renders the statute ineffectual. When the language of a statute permits two constructions, one of which would make an enactment absurd and illogical, while the other renders it reasonable and sensible, the construction which leads to an absurd result must be avoided. *People v. Stanciel*, 153 Ill. 2d 218, 606 N.E.2d 1201 (1992).

Defendant argues that the statutory language allowing a *defendant* to use PBT results in any administrative or court proceeding indicates that similar use by the *State* is prohibited. However, the maxim *expressio unius est exclusio alterius*, which means that the expression of one thing implies the exclusion of another (Black's Law Dictionary 581 (6th ed. 1990)), is a rule of construction, not a rule of law (*Baker v. Miller*, 159 Ill. 2d 249, 636 N.E.2d 551 (1994)). It should never be applied to defeat the purpose of a statute. *Paxson v. Board of Education of School District No. 87*, 276 Ill. App. 3d 912, 658 N.E.2d 1309 (1995).

We find that the trial court erred in ruling that the PBT results were inadmissible at the hearing on defendant's motion to quash his arrest and suppress evidence. We reverse the judgment granting defendant's motion and remand for further proceedings consistent with this opinion.

Reversed and remanded.

LYTTON, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent. Unlike the majority, I see no ambiguity in section 11—501.5 of the Code. The statute clearly states that the *sole* purpose for which law enforcement may employ preliminary breath screening tests is "*the* purpose of assisting [the officer] with the determination of whether to require a chemical test as authorized under Sections 11—501.1 and 11—501.2, and the appropriate type of test to request." (Emphasis added.) 625 ILCS Ann. 5/11—501.5 (Michie 1996). The statute is equally clear in authorizing *only* the defendant, not the People, to use the results of the preliminary breath screening test in a court proceeding involving a charge of driving under the influence of alcohol in violation of section 11—501 of the Code. 625 ILCS Ann. 5/11—501.5 (Michie 1996).

As the majority noted, the most reliable indicator of legislative intent is the language of the statute (*People v. Tucker*, 167 Ill. 2d 431

(1995)), and where the language of the statute is clear, it will be given effect without relying upon other aids for construction. *People v. Zaremba*, 158 Ill. 2d 36 (1994). In construing the words of the statute, we must give them their plain and ordinary meaning. *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194-95 (1992).

Unlike the majority, I see no need to resort to the abyss of legislative history. The plain and ordinary meaning of the words in the PBT statute is clear. The test may be used in *only* two situations: (1) by a law enforcement officer to assist him or her in determining whether to require certain chemical tests authorized by statute, and (2) by a defendant as evidence in any administrative or court proceeding involving a charge of driving under the influence of alcohol or drugs, or in an implied consent hearing under section 11—501.1 of the Code.

If, as the majority suggests, the legislative intent of the PBT statute was actually contrary to the clear and unambiguous language enacted into law, and the legislature actually intended other unstated purposes and uses for the test, it should have taken care to accurately express its intent.