SECOND DIVISION

JANUARY 25, 2000

1-98-2905

PHOENIX BOND AND INDEMNITY ) Appeal from the

CO., MIDWEST REAL ESTATE ) Circuit Court

INVESTMENT COMPANY, INC., OAK ) of Cook County

PARK INVESTMENTS, INC., AND )

S.I. SECURITIES, )

)

Plaintiffs-Appellees, )

) No. 98 CO 008

v. )

)

MARIA PAPPAS, COOK COUNTY )

TREASURER AND 
ex-officio
 COUNTY ) 

COLLECTOR OF COOK COUNTY, ) The Honorable

) Francis J. Barth,

Defendant-Appellant. ) Judge Presiding.

OPINION MODIFIED UPON DENIAL OF REHEARING

PRESIDING JUSTICE COUSINS delivered the opinion of the

 court:

The plaintiffs are tax buyers at the annual Cook County tax sale.  In response to perceived anti-competitive practices among the bidders at the auction, the Cook County treasurer and 
ex
 
officio
 county collector instituted a rule that properties on which multiple, simultaneous identical bids were made would not be sold at the auction.  The plaintiffs brought this action seeking an injunction against the enforcement of this rule.  The circuit court granted a temporary restraining order, which this court affirmed without opinion.

The defendant, surmising that the plaintiffs might be guilty of collusion, attempted to discover materials that would support her equitable defense of unclean hands.  The plaintiffs moved that the discovery requests be quashed, and the circuit court granted their motion.  The parties then filed cross motions for summary judgment.  The circuit court ruled in favor of the plaintiffs and against the defendant, entering a permanent injunction preventing the collector from enforcing the disputed rule.

The defendant now appeals, arguing that: (1) the trial court erred in granting summary judgment for the plaintiffs and denying her motion for summary judgment; and (2) the trial court erred in quashing her discovery requests.

BACKGROUND

 Many procedures are available to an Illinois county collector to secure payment of delinquent property taxes.  See generally D. Karlen & R. Slutzky, 
Tax Collection and Methods of Enforcement
, in 
Real Estate Taxation (Ill. Inst. for Cont. Legal Educ. 1997).  As a first step the collector generally proceeds 
in
 
rem
 and files with the circuit court for judgment in the amount of taxes due plus costs and an order authorizing sale in satisfaction of the judgment.  If the circuit court grants its approval, the delinquent property goes to a public auction. 
Rosewell v. Chicago Title & Trust Co.
, 99 Ill. 2d 407, 410, 459 N.E.2d 966, 967 (1984); 35 ILCS 200/21-190 (West 1996).  There, tax buyers who are registered and (in Cook County) satisfy a bond requirement bid upon the property.  35 ILCS 200/21-220 (West 1996).  The tax buyers pay the judgment and in exchange receive a tax lien on the property.

   A person possessing an interest in the property may redeem the parcel within (in most cases) two years of the purchase by the tax buyer.  Ill. Const. 1970, art. IX, §8; 35 ILCS 200/21-345 
et
 
seq.
 (West 1996).  In order to redeem the property, the person must pay to the tax buyer the judgment along with interest, the tax buyer's costs and a penalty which accrues at six-month intervals.  Three to five months before the expiration of the redemption period, the tax buyer may file for a tax deed, which can be granted if the property is not redeemed.  The tax deed gives the tax buyer ownership in fee simple subject only to certain exceptions, such as for public easements or covenants running with the land. 35 ILCS 200/22-70 (West 1996).

At the public auction, the tax buyers bid on the rate of penalty they will take at redemption.  The maximum allowable rate is 18% for each six-month period 
or fraction thereof.  35 ILCS 200/21-215 (West 1996).  If there are no bids for a tract at the auction, the property is, in the terminology of the statute, "forfeited to the State." 35 ILCS 200/21-215 (West 1996). The term "forfeited to the State" can be confusing in this context, for title to the parcel does not change hands, and the state does not acquire an interest in the property.  When a property is "forfeited," this simply means that other collection methods will be employed to collect the delinquent taxes.  32 Ill. L. & Prac. 
Revenue
 §331 (1957).

After a property is declared forfeited, it may be disposed of in several ways.  First, in a rarely used provision, when the collector determines that the value of the parcel is less than the amount of delinquent taxes, she sells the property and applies any proceeds to the tax bill in a "special tax sale." 32 Ill. L. & Prac. 
Revenue
 §336 (1957); 35 ILCS 200/21-225 (West 1996).  Another possibility is that the owner of the delinquent property may redeem it from the county by paying the judgment and a penalty determined at a rate of 12% annually.  Also, a tax buyer may acquire a tax lien with a "forfeiture sale."  A forfeiture sale is like a purchase at the public auction, except that the penalty rate is set at 12%.  The county collector also has the option of proceeding 
in
 
personam
 in a civil action against the taxpayer.  35 ILCS 200/21-440 (West 1996).  

Property more than two years delinquent may go to a "scavenger sale."  35 ILCS 200/21-260 
et
 
seq.
 (West 1996).  The scavenger sale resembles the tax sale auction, except that the penalty rates are fixed.  The rate is generally 12%, but is lower if the property is redeemed in the first 2 months after the sale.  Also, the rate drops after two years at 12%.  The buyers bid not on the penalty rate, but instead on how much of the delinquent taxes they are willing to pay.  The bidding starts at half of the delinquent taxes or $250, whichever is less.  Long delinquent property may also be sold at a "tax foreclosure sale[]" (35 ILCS 200/21-75 (West 1996)), which operates similarly to a scavenger sale.

This case concerns the conduct of the Cook County public tax auction.  The plaintiffs are tax buyers who bid in the auction of 1996 tax delinquencies, which commenced in January 1998.  There were 8 to 12 bidders participating at any particular time.  From the beginning of the auction, for almost every tract offered, all the bidders simultaneously bid 18%, the maximum allowable bid, and then no further bids were made.  The normal practice at the auction in the case of identical bids is to award the property to the first bidder.  However, since the bids were simultaneous, the auctioneer had no way to determine a winner and was forced to award the property at random.  

From January 12 to January 20, 95% of the properties went in this fashion.  The penalty rate was bid down in only 5% of the cases.  On January 21, the auctioneer made the following announcement:

"As you are all aware the statute provides that during this sale the property in question shall be awarded to the bidder who bids the least penalty percentage.  In accordance with the statute, the following procedure will be implemented.

Only the person offering to pay the amount due on each property for the least penalty percentage will be the successful purchaser of that property.

No bid shall exceed 18% and if multiple simultaneous bids of the same percentage are made, no one of these bids being the least, none will be accepted.

If multiple simultaneous bids are received at the same percentage, bidders will be given an opportunity to bid at a lower percentage and if no bid of a lower percentage is received,  the property will be forfeited."

After this rule was instituted, only four properties were forfeited due to multiple simultaneous bids.  By January 26, 1998, fewer than 1% of the properties sold were for 18% penalty, and in each case there was a clear winning bid.  The four plaintiffs filed this action for an injunction to prevent enforcement of the rule.  On January 27, 1998, the plaintiffs obtained a temporary restraining order blocking enforcement of the rule.  Immediately thereafter the tax buyers resumed making multiple simultaneous bids at 18%.  The Cook County treasurer 
ex
 
officio
 county collector (the collector) appealed the grant of the temporary restraining order, but the appeal was denied without opinion. 
Phoenix Bond & Indemnity Co. v. Rosewell
, No. 1-

98-0324, 
appeal
 
denied
 (February 3, 1998).

As an affirmative defense in the action for the permanent injunction, the collector alleged unclean hands on the part of the plaintiffs.  The collector sought to discover materials which might indicate collusion on the part of the plaintiff tax buyers.  The plaintiffs moved to quash this discovery request and the trial court granted their motion.  The court reasoned that the case turned on a narrow issue of statutory interpretation, to which the issue of possible collusion was not relevant.

The parties filed cross-motions for summary judgment.  The circuit court ruled in favor of the plaintiffs and against the defendant.  The defendant now appeals, arguing that: (1) the circuit court erred in granting the plaintiffs' motion for summary judgment and denying its motion; and (2) the circuit court erred in denying the defendant's discovery request relating to its defense of unclean hands.

ANALYSIS

As the matter before us is primarily one of statutory construction, we review 
de
 
novo
. 
Advincula v. United Blood Services
, 176 Ill. 2d 1, 12, 678 N.E.2d 1009, 1015 (1996).  The first question we will consider is whether the collector has general authority to make rules about the auction.  The circuit court's view was:

"[T]he Collector derives his authority from the statutes.  The County Treasurer statute is 55 ILCS 5/3 1001, 
et
 
seq.
 and the Property Tax Code.

But a review of those statutory provisions reveals no authority to promulgate rules.  Particularly when tax delinquent property shall be declared forfeited to the state."

The circuit court further stated that "[t]he General Assembly, as I said, could have granted the Collector the authority to deal with problems or difficulties that may arise during the conduct of the sale, but it did not."  

In our view, however, when the General Assembly authorized the collector to hold an auction, it impliedly gave her authority to "deal with problems or difficulties that may arise during the conduct of the sale."  While the county collector is a statutory officer, whose powers are circumscribed by statute (
People ex rel. Lord v. Shrout
, 235 Ill. App. 509 (1924)), we believe the collector has implied authority to make rules for the orderly, efficient and fair conduct of the annual tax sale.  Implied authority arises from the fact that "'a legislative grant carries with it, by implication, the powers necessary to make the grant effective.'" 
Roesch-Zeller, Inc. v. Hollembeak
, 5 Ill. App. 2d 94, 107, 124 N.E.2d 662, 668 (1955), quoting 
Euziere v. Highway Commissioner
, 346 Ill. 131, 134, 178 N.E. 397, 398 (1931); 
People ex rel. County of DuPage v. Smith
, 21 Ill. 2d 572, 580, 173 N.E.2d 485, 490 (1961) ("the legislative grant of power carries with it the right to use all means and instrumentalities necessary to the beneficial exercise of the expressly conferred powers"); see also 2B N. Singer, Sutherland on Statutory Construction §55.04 (5th ed. 1992).  

A leading treatise explains the rationale for implied authority thus:

"The justification for extending the operative effects of statutes by implication and inference is that it is not practical or convenient, perhaps even possible, to specify all of the detailed operational effects that an enacted rule or principle should have in all of the various circumstances to which it may pertain. *** Peripheral matters or matters of minor detail are frequently omitted from specific mention in legislative enactments, and 'if these could not be supplied  by implication the drafting of legislation would be an interminable process and the true intent of the legislature likely to be defeated.'" 2B N. Singer, Sutherland on Statutory Construction §55.02 at 277-

78(5th ed. 1992), quoting 
Smull v. Delaney
, 175 Misc. 795, 801, 25 N.Y.S. 2d 387, 395 (1941).

It is our opinion that the power to conduct an auction necessarily carries with it the power to set reasonable ground rules for the auction, provided such rules are not specified by statute.  It was the opinion of the circuit court that such rules were in fact specified in the Property Tax Code (35 ILCS 200/1-1 
et
 
seq.
 (West 1996)). 

"And the tax sale procedures are governed very specifically by the Property Tax Code.  As I indicated earlier, see 35 ILCS 200/21-205.

That covers very specifically the tax sale procedure.  So on the one hand we have no rule-making authority, and on the other hand, we have the General Assembly getting very specific as to how this tax sale procedure shall be conducted."

As we read it, however, section 21-205 provides very little detail as to how the sale is to be conducted.  It gives the hours for the sale and says that the property will be offered "separately and in consecutive order," and "day to day, until all property in the delinquent list has been offered for sale."  35 ILCS 200/21-205 (West 1996).  These minimal guidelines leave a host of decisions about the conduct of the auction to the discretion of the collector.  

An example of such a decision would be the rule that when there are multiple, 
identical 
nonsimultaneous
 bids, the property goes to the first bidder.  This is not the only conceivable way one could handle the matter.  One could award the property to the tie bidders randomly or in a predetermined sequence or in some other fashion.  Although the rule awarding property to the first of nonsimultaneous tie bidders is not in the statute, the circuit court saw no problem with this rule.  In fact, the court thought that the statute required this rule to be applied to the case of simultaneous bids as well:

"If more than one person bids the same amount, then the auctioneer must make the call as to who was first.

At least this is what the statue requires at this time in the Court's view."

The plaintiffs argue that the first-bidder rule is not only permitted but indeed that it must be applied in this situation, where it is not obviously appropriate.  One must remember that the issue before us concerns the situation where the auctioneer 
cannot
 
tell
 who is first (otherwise, the auctioneer simply awards the property to the first person.)  If the auctioneer "makes the call" as to who is first when he or she cannot tell who is first, then the auctioneer is simply guessing.  Given that the statute is silent on the point, why should the only permissible solution be to indulge the fiction that the auctioneer, who by hypothesis cannot tell who made the first bid, is awarding the property to the first bidder?

Delegation of power to a public official such as the county collector is one of the most common situations in which implied authority is found.  "[T]he rule of construction which extends a grant of power by implication is most often applied where powers are delegated to public officers or administrative agencies, because those implied powers may involve many functions which are discoverable only through practical experience." 
 
City of Chicago v. State & Municipal Teamsters
, 127 Ill. App. 3d 328, 338, 468 N.E.2d 1268 (1984); see 2B N. Singer, Sutherland on Statutory Construction §55.04 (5th ed. 1992).  In our view, the calling out in unison of the highest penalty rate for each property by all the participants in the auction is exactly the type of circumstance discoverable only by practical experience for which implied authority is necessary.

Given that the collector has general authority to make rules for the auction, we further hold that it was not appropriate to enjoin the rule in question here.  "Normally, discretionary acts of a public official in exercising his duties are not subject to review by the judiciary in an injunction action."  
Arnold v. Engelbrecht
, 164 Ill. App. 3d 704, 707, 518 N.E.2d 237, 239 (1987).  There are exceptions to this rule, such as when the act of the public official is arbitrary or capricious (
Arnold
, 164 Ill. App. 3d at 707, 518 N.E.2d at 239), when fraud, corruption or gross injustice is shown 
(
Arnold
, 164 Ill. App. 3d at 707, 518 N.E.2d at 239), or when the act is outside the official's authority or unlawful (
Rocke v. County of Cook
, 60 Ill. App. 3d 874, 875, 377 N.E.2d 287, 289 (1978)).

We do not regard the actions of the collector as arbitrary or capricious.  The circuit court conceded that the collector put consideration into the rule and that the rule seemed to have had the desired effect.  It is not unreasonable to think that such a rule would promote competition, which is in accord with the purpose of selling delinquent taxes by auction.  
Boynton v. People ex rel. Kochersperger
, 166 Ill. 64, 69, 46 N.E. 791, 793 (1897).  Furthermore, there has been no allegation of fraud, corruption or gross injustice.

The plaintiffs, however, contend that an injunction will lie because the collector's act is unlawful.  They argue that the Property Tax Code clearly prohibits the disputed rule.  According to the plaintiffs, it is a specific mandate of the statute governing the annual tax sale that, in their words, "properties can only be forfeited if there are no bids."  They point to section 21-225 as the source of this mandate.

"Forfeited property.  Every property offered at public sale, and not sold for want of bidders, unless it is released from sale by the withdrawal from collection of a special assessment levied thereon, shall be forfeited to the State of Illinois." 35 ILCS 200/21-225 (West 1996).

Of course, the above provision does not state that 
only
 property not sold for want of bids may be forfeited.  The plaintiffs' interpretation is not necessitated by the plain language of the statute.

The defendant, for her part, contends that the statute affirmatively prohibits her from selling the property unless there is a single person making a least bid.  She points to section 21-215 as support.

"Penalty bids.  The person at the sale offering to pay the amount due on each property for the least penalty percentage shall be the purchaser of that property." 35 ILCS 200/21-215 (West 1996).

The collector's position also is not without difficulties.  Previously the collector has without objection awarded property when there are identical nonsimultaneous bids--the property goes to the first bidder.  But it seems that this practice too would be unauthorized under the collector's reading of the statute.

In interpreting a statute, the primary goal is to give effect to the intention of the legislature, and the primary source to determine that intent is the language of the statute itself.  
People v. Davis
, 296 Ill. App. 3d 923, 926, 695 N.E.2d 1363, 1364 (1998).  Despite the fact that both parties claim that their reading is mandated by the plain language of the statute, in our view, the statute is ambiguous.  A statute is ambiguous when it is capable of being understood in different ways by reasonably well-informed persons and thus warrants consideration of other sources to determine legislative intent.  
Davis
, 296 Ill. App. 3d at 926, 695 N.E.2d at 1365.

Implicitly acknowledging that the statute was ambiguous, the circuit court resorted to rules of construction.  
People ex rel. Roan v. Wilson
, 405 Ill. 122, 90 N.E.2d 224 (1950).  The circuit court interpreted the statute as prohibiting forfeiture except for a want of bidders based on the maxim 
"
expressio
 
unius
 
est exclusio
 
alterius
," meaning that the expression of one thing implies the exclusion of another. 
Davis
, 296 Ill. App. 3d at 929, 695 N.E.2d at 1366.  In the instant case, since the legislature directed that property be forfeited when there are no bidders, but did not direct that it be forfeited in any other circumstance, the circuit court inferred that this was to be the only time that property could be forfeited.  However, we note that this maxim is a rule of construction, not a rule of law, and should never be applied to defeat the purpose of a statute. 
Davis
, 296 Ill. App. 3d at 929, 695 N.E.2d at 1366; 
Paxson v. Board of Education of School District No. 87
, 276 Ill. App. 3d 912, 921, 658 N.E.2d 1309, 1315 (1995).

The purpose of a tax sale is for the county to collect delinquent taxes at the lowest cost of redemption.  
In re McKeever
, 166 B.R. 648, 650-51 (N.D. Ill. 1994).  Furthermore, "[t]he object of having a public sale is [] that there may be competition in bidding."  
Boynton
, 166 Ill. At 69, 46 N.E. at 793.  Clearly the annual tax sale statute, when it directs that property be awarded to the least bidder, envisions a competitive sale process.  If we were to adopt the interpretation urged by the plaintiffs, it would defeat the entire purpose of having a tax auction.  If there is no competitive bidding and the auctioneer is handing out properties at a fixed rate, there is no reason to have the auction rather than to proceed directly to forfeiture sales and scavenger sales, where the penalty rates are fixed.

In 
People ex rel. Rossiter v. Wagemann
, 293 Ill. App. 37, 12 N.E.2d 40 (1937), the court considered the question of whether the predecessor to section 21-225 required the collector to conduct special sales.  The portion of this section that was at issue provides that when the county collector makes assessments of property and finds that their value is less than that of the delinquent taxes, he or she is to sell the property and apply the proceeds to the delinquency.  35 ILCS 200/21-225 (West 1996).  The plaintiffs in 
Wagemann
 sought 
mandamus
 to force the collector to make assessments of delinquent property and hold special sales where appropriate.  The circuit court denied 
mandamus
, and the appeals court affirmed, holding that the special sale was only one method by which taxing bodies could collect delinquent taxes and that the officer had the discretion to pursue some other remedy if in the judgment of the officer it was a better method of collection. 
Wagemann
, 293 Ill. App. at 40, 12 N.E.2d at 42.  The court noted:

"'[W]here an officer, in the exercise of a discretionary power, has considered and determined what his course of action is to be[,] he has exercised his discretion, and his action is not subject to review or control by 
mandamus
; and so careful are the courts of encroaching in any manner upon the discretionary powers of public officials, that if any reasonable doubt exists as to the question of discretion or want of discretion[,] they will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer,"  
Wagemann
, 293 Ill. App. at 39-

40, 12 N.E.2d at 41, quoting 
MacGregor v. Miller
, 324 Ill. 113, 118, 154 N.E. 707, 710 (1926).

Similarly in this case, we believe that in interpreting section 21-225 the collector must be allowed reasonable discretion in order to promote the statute's purpose.

An important consideration in interpreting this statute is the public policy in favor of redemption of property from tax sales.  
Monreal v. Sciortino
, 238 Ill. App. 3d 475, 478, 606 N.E.2d 328, 331 (1992).  The right of redemption is guaranteed in the Illinois Constitution (Ill. Const. 1970, art. IX, §8), and redemption is widely recognized as a favored result.  
In re Application of the County Treasurer & ex officio County Collector
, 301 Ill. App. 3d 672, 675, 704 N.E.2d 910, 912 (1998); see also 3A N. Singer, Sutherland on Statutory Construction §66.08 (5th ed. 1992) ("The enforcement and collection of taxes through the sale of the taxpayer's property has been regarded as a harsh procedure, and therefore the policy has been to favor the rights of the property owner in the interpretation of such laws").  But the interpretation urged by the plaintiffs would tend to thwart redemption.  If the tax auction is allowed to proceed without competitive bidding, this leads to a higher cost of redemption and, accordingly, fewer redemptions.  

As the second district wrote with regard to a related section of the Property Tax Code:

"Our goal in interpreting [the section] is to ascertain and effectuate the legislature's intent, to which the primary guide is the statutory language itself. [Citation.] If that language is unambiguous we apply it straightforwardly. [Citation.] Insofar as we find ambiguity, we construe [the section] liberally, as the law looks with favor on redemptions from tax sales."  
In re Application of the County Treasurer
, 301 Ill. App. 3d at 675, 704 N.E.2d at 912.

Since in construing this statute we are to protect the interest of the landowner at the time of the sale (
Lawton v. Sweitzer
, 354 Ill. 620, 627, 188 N.E. 811, 814 (1933)), we interpret it so as to allow the collector to make the rule in question in order to prevent artificially high (
i.e.
 not competitively determined) redemption rates.

We are unmoved by plaintiffs' pleas of hardship for themselves.  As the 1996 auction was proceeding without the disputed rule, tax buyers would get either the property, probably at a fraction of its value, or a guaranteed annual return on their investment of 
at least
 36%.  (The rate will probably be somewhat higher, because another 18% penalty is added at the 
beginning
 of every six-month period.)  We do not believe that the intent of the legislature was to grant tax buyers an entitlement to this sort of windfall at the expense of property owners.

The plaintiffs assert that the county will suffer from properties being forfeited.  Admittedly, the county will suffer if property taxes are not collected.  However, we note that the record indicates that during the period that the rule was in effect it resulted in only four forfeitures.  Hundreds of properties, by contrast, are forfeited every year at the auction for want of bidders.  Moreover, the fact that a property is "forfeited to the State" does not mean that the delinquent taxes will not be recovered.  "Forfeited" simply means that the county will attempt a different means of collection.  And when all the property sold at the auction is at the highest bid and a lack of competition is evident, it seems entirely reasonable for the collector to proceed to another method of collection, such as a forfeiture sale or a scavenger sale.

CONCLUSION

Accordingly, we reverse the grant of summary judgment for the plaintiffs and order entry of summary judgment for the defendant.  Since we find summary judgment is appropriate on the record as it stands, the discovery issue is moot.

Reversed.

GORDON and McBRIDE, JJ., concur.